26 C.C.P.A.(Patents)

## In re MYERS.
### Patent Appeal No. 4177.

Court of Customs and Patent Appeals.
June 19, 1939.

Raymond W. Colton, of Washington, D. C. (Barton A. Bean, Jr., of Washington, D. C., Edwin T. Bean and George F. Goodyear, both of Buffalo, N. Y., and Conrad Christel, of Washington, D. C., of counsel), for appellant.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Primary Examiner rejecting claims 15 to 21, inclusive, in appellant's application for a patent for an alleged invention relating to improvements in rotary disk edging machines.

The involved application, filed February 14, 1936, is for the reissue of patent No. 1,951,105, issued March 13, 1934, on an application filed February 3, 1933.

Claim 15 is illustrative of the appealed claims. It reads:

"15. In a portable manually liftable abrading or finishing machine, a motor therein, an abrading tool operatively connected to said motor to be driven thereby, means for positioning said abrading tool whereby only a selected portion thereof may momentarily contact with the work to be treated, and buffer means for contacting in non-marring relation with a surface at an angle to the surface being treated in substantially the same vertical plane as the leading edge of said abrading tool and formed and adapted to permit said abrading tool to operate upon the surface under treatment substantially up to said angular surface while withholding said abrading tool from contact with said angularly disposed surface."

The references are: Huyck, 1,086,368, February 10, 1914; Peterson, 1,650,035, November 22, 1927; Myers, 1,914,280, June 13, 1933.

The appealed claims relate to a portable surfacing machine for sanding or otherwise treating marginal portions of floors or other surfaces without danger of marring baseboards or other surfaces at right angles to the surfaces being treated.

Appellant's device is portable, manually liftable, and compact, and comprises a substantially flat abrading rotatable surfacing disk which is driven by a motor arranged

over and above it, means for positioning the abrading disk whereby only "a selected portion thereof may momentarily contact" the surface being treated, a suction hood to receive dust, an exhaust fan connected to the suction hood, and a buffer means rotatable about the axis of the abrading disk "in substantially the same vertical plane as the leading edge of said abrading disk," so formed and adapted as to permit the abrading disk to operate upon the floor surface substantially up to a surface at right angles thereto, such as a baseboard, and prevent contact of the edge of the tool with the surface at right angles with the surface being treated.

The patent to Huyck relates to a floor surfacing and polishing machine, and discloses a motor for driving a rotary sanding or polishing head. It does not disclose a buffer means, and, although the device disclosed therein is portable in that it can be moved around, it is not manually liftable and in compact form as is appellant's.

The patent to Peterson relates to a portable motor-driven polishing and cleaning machine in compact form. The motor for driving the rotary sanding or abrading disk is located directly over the disk. The patent does not disclose a buffer. The device is provided with an adjustable wheel so as to "permit a light contact of one side of the working contacting element with the surface of the floor."

The reference patent to Myers, appellant's patent, relates, as stated in the patent, to a "rotary disc edging attachment for rotary drum sanding machines * * * [and] is adaptable for use in connection with conventional marketed types of rotary drum sanding machines." Claim 4 is illustrative of the claims in that patent. It reads:

"4. A structure of the class described comprising a portable surfacing head including a rotary driven shaft, a surfacing element operatively connected with said shaft, a dust collector unit partially surrounding said element, and a buffer mounted on said head for independent rotation with respect to said surfacing element, said buffer being of a proportion to permit its peripheral edge to project beyond the marginal portions of the surfacing element."

The claims here on appeal were rejected by the Patent Office tribunals on either the patent to Peterson or Huyck in view of appellant's patent No. 1,914,280.

The Board of Appeals concurred in the views expressed in the decision of the Primary Examiner.

In view of the Primary Examiner's exhaustive discussion of the issues involved, we deem it proper to quote in extenso from his decision:

"Claims 15 to 21 inclusive were rejected as not being patentable over either one of patents to Peterson and Huyck in view of patent to Myers. These claims seem to define no substantial or patentable distinction over either one of the patents to Peterson and Huyck in any particular other than the buffer (applicant's part 34) which prevents the edge of the sanding tool from contacting and damaging a surface at right angles to the surface being sanded. Applicant has already been granted a patent (the Myers patent cited above) *for the combination of his buffer and a portable sanding tool and the Examiner fails to see that applicant has produced any additional patentable invention by applying his buffer to other specifically different but old constructions of portable sanding machines.* It seems obvious from the patents themselves that the buffer 72 of the Myers' patent is adapted to be used with other machines such as those of the Peterson and Huyck patents *and the rejected Claims in this application would apparently have to depend for patentable novelty over the prior art upon the same invention as that covered by the broadest Claims in the Myers' patent because the specific differences in the sanding machine set forth in the finally rejected Claims seem to involve no patentable novelty in themselves in view of patents to Peterson and Huyck* and such differences are not responsible for any cooperative relation between the buffer and sanding machine that is not old in the Myers' patent. All that the buffer does at any time is to act as a stop to prevent the operator from moving the edge of the tool against a surface that it would mar.

"Peterson shows that it is old to make the machine of a compact form by arranging the motor directly above the sanding disk, to shape the active disk surface as a relative flat cone, to provide supports 48 to facilitate holding the machine in a tilted position so that only a small area of the sanding disk face is in contact with the work and to provide a guard and dust collecting housing around the disk tool.

"Applicant's expedient of arranging the peripheral edge of the buffer in substantial

vertical alinement with the edge of the sanding disk and cutting away part of the dust collecting hood to expose the edge of the buffer is part of the teaching and consideration for which his patent, 1,914,280, was granted. It is not apparent how applicant can again rely on such features to support a second patent that would expire at a later date than his first patent and deprive the public of using such features in an obvious way by applying them to Peterson's old construction of portable machine in which they would accomplish only what they accomplish in Myers' machine of his patent 1,914,280.

"To support the use of the Myers' patent as a reference the Examiner cited Ex Parte Chapman 329 O.G. 263, which seems to support the practice stated as follows:

" 'An applicant can not obtain a second patent for an invention already patented to him, and this is true whether the application for the already-granted patent was filed before or after the filing of the application for the second patent.

" 'If with applicant's prior patent and the other prior art placed before him nothing but ordinary mechanical skill is necessary to produce the device for which applicant is seeking a second patent, he has made no second invention and is not, therefore, entitled to a second patent.'

"Patent to Huyck also shows a similar portable machine and an example of the common practice in the art of connecting a suction fan and conduit with the dust hood that covers the sanding disk and no invention is seen in applying the buffer of Myers' patent to Huyck's machine. The combination of the buffer with a suction hood, conduit and exhaust fan is also disclosed in the Myers' patent.

"Compactness or size alone was not considered to involve invention in the case of In Re: Einstein 406 O.G. 287; 46 F.2d 373; 1931 C.D. 165." (Italics ours.)

Claim 15 calls for "means for positioning said abrading tool whereby only a selected portion thereof may momentarily contact" the surface being treated.

The Board of Appeals held that Peterson discloses means, an adjustable wheel, for positioning his abrading tool so that only a selected portion of it would contact the surface being treated.

Counsel for appellant state in their brief that Peterson "did not appreciate, as does the appellant, that he could dispense entirely with such an adjusting means and allow the entire weight, other than that resting on the fixed rollers 48, to rest directly upon the abrading surface."

It appears from the Peterson patent that the patentee's rollers for positioning his abrading tool are so placed that they will prevent the abrading disk from treating marginal portions of a floor close to the baseboard or other surface at right angles to the surface being treated, and it is contended by counsel for appellant that by "eliminating any support in front of the abrading disk" appellant made an unobvious improvement over the prior art, particularly when the elimination of such support is considered in connection with the buffer means; that the application which matured into the Myers reference patent was copending with the application which matured into the Myers patent No. 1,951,105, for which the involved application is for a reissue; that, therefore, the Myers reference patent is a proper reference only for what is claimed therein, and not for matters merely disclosed therein; that the Patent Office tribunals rejected the appealed claims on the disclosures in the Huyck and Peterson patents in view of the disclosure, rather than the claims, in the Myers reference patent; and that as affidavits of record establish that appellant's device has met with outstanding commercial success, any doubt that the appealed claims define patentable subject matter should be resolved in favor of appellant.

It will be observed that quoted claim 4 of the Myers reference patent defines a portable surfacing head, a rotary driven shaft, a surfacing element operatively connected with the shaft, a dust collector, and a buffer "mounted on said head for independent rotation with respect to said surfacing element, said buffer being of a proportion to permit its peripheral edge to project beyond the marginal portions of the surfacing element." Although the claims in that patent do not include a motor, a motor is disclosed in each of the patents to Huyck and Peterson. It is apparent, therefore, that appellant has combined the buffer means and other elements set forth in the claims of the reference patent to Myers with other old elements disclosed in the patent to Peterson, except that appellant's means (rollers) for positioning his abrading disk, instead of being in front of the abrading disk, as are the rollers in the Peterson structure, are plac-

394

ed so as to permit the abrading disk to come in close proximity with a baseboard or other surface at right angles to the surface being treated.

It is apparent, we think, that this change in the prior art structure would be obvious to one skilled in the art.

It is evident from the decisions of the Patent Office tribunals that the appealed claims were rejected on the disclosures in the patents to either Huyck or Peterson in view of the claims in appellant's patent—the reference patent to Myers.

That the tribunals of the Patent Office had a right to consider the patentability of the appealed claims in the light of the disclosures in the patents to Huyck and Peterson in view of the subject matter claimed in the Myers reference patent, is well settled. In re Barge, 96 F.2d 314, 25 C.C.P.A., Patents 1058, 1062.

It is true, as argued by counsel for appellant, that where the question of invention is a doubtful one commercial success may be considered as evidence of invention. In re Charles H. Peddrick, Jr., and Philip Wager Lewis, 48 F.2d 415, 18 C.C.P.A., Patents, 1161. However, where it clearly appears from the record that claims do not define patentable subject matter, commercial success of a claimed invention may not be considered. In re Sola, 77 F.2d 627, 22 C.C.P.A., Patents, 1313, 1318.

Although it appears in the instant case that appellant's device has met with commercial success, it further appears that his application discloses patentable subject matter, as he has been allowed fourteen claims, and it may be that the commercial success with which the device has met is due to the efficiency of the structure defined in the allowed claims.

We are of opinion, as were the Patent Office tribunals, that the claims here on appeal do not define patentable subject matter over the disclosures in either the patent to Peterson or that to Huyck in view of the claimed subject matter in the reference patent to Myers—appellant's prior patent.

Counsel for appellant have devoted considerable space in their brief to a comparison of the appealed claims with the allowed claims. However, the question of the patentability of the appealed claims must be determined in the light of the ref-

erences of record, not by comparing their similarities and dissimilarities with claims allowed by the Patent Office tribunals. In re McCabe, 74 F.2d 758, 22 C.C.P.A., Patents, 877, 880.

Counsel for appellant also argue that appellant's device is distinguishable from the devices disclosed in the references in that it is compact, portable, and manually liftable.

The patent to Peterson discloses a compact device, and, although we are unable to state definitely that the Peterson device is as compact as appellant's, the matter is unimportant, as patentability may not be predicated upon mere compactness or size. In re Thomas B. Bennett, 40 F.2d 755, 17 C.C.P.A., Patents 1113; In re Sol Einstein, 46 F.2d 373, 18 C.C.P.A., Patents, 885; In re Wilms, 63 F.2d 355, 20 C.C.P.A., Patents, 896.

The decision of the Board of Appeals is affirmed.

Affirmed.